Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| COLEGIO DE MÉDICOS VETERINARIOS DE PUERTO RICO<br><br>Demandante-Apelante<br><br>Vs.<br><br>SYLVIA BEDROSIAN HERES; PET FRIENDLY PR, CORP.<br><br>Demandados-Apelados | KLAN202500256 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV06391<br><br>Sala:  808<br><br>Sobre: DIFAMACIÓN; DAÑOS Y PERJUICIOS |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.[1]

Cruz Hiraldo, Juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de mayo de 2025.

Comparece el Colegio de Médicos Veterinarios de Puerto Rico (en adelante, CMVPR y/o parte apelante) mediante un recurso de *Apelación,* para solicitarnos la revisión de la *Sentencia* emitida el 31 de enero de 2025, notificada el mismo día, por el Tribunal de Primera Instancia, Sala Superior de San Juan.[2] Mediante la *Sentencia* apelada el Foro primario dictó sentencia sumaria a favor de la Sra. Sylvia M. Bedrosian Heres y Pet Friendly PR, Corp. (en adelante, partes Apeladas). A tenor, desestimó la *Demanda* por entender que las expresiones de la parte apelada constituían una opinión y no unas de naturaleza difamatoria.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

---

[1] Mediante la OATA-2025-070 del 9 de mayo de 2025, se designó a la Hon. Monsita Rivera Marchand para entender y votar en el caso de epígrafe en sustitución del Hon. Abelardo Bermúdez Torres.
[2] Apéndice 28 del Recurso, a las págs. 92-105; Entrada 28 SUMAC.

Número Identificador

SEN2025 _____

**-I-**

El día, 9 de julio de 2024, el CMVPR presentó una *Demanda* en contra de la señora Bedrosian Heres y Pet Friendly por difamación.[3] En síntesis, alegó que el 22 de mayo de 2024 las partes apeladas publicaron en su cuenta de Instagram un video editado de una entrevista tramitada en el Programa Cuarto Poder del Sr. Jay Fonseca donde la Sra. Sheila M. Vega Zambrana (en adelante, señora Vega Zambrana y/o presidenta del CMVPR), presidenta del CMVPR, fue panelista. Añadió que el referido video estuvo acompañado de las siguientes expresiones por parte de Pet Friendly: "Nosotros llevamos señalando la ineptitud de OECA y del Colegio de Médicos Veterinarios. No sirven, no saben qué hacer y el video habla por sí sólo".

Por otra parte, señaló que el video omite ciertas expresiones de la presidenta del CMVPR, que el video fue editado intencionalmente y que esto dio ha lugar a que pareciera que la presidenta del CMVPR no podía responder las preguntas del señor Fonseca. Adujo que las partes apeladas hicieron otra publicación en la cuenta de Facebook que lee: "La presidenta del Colegio de Médicos Veterinarios nos demostró una vez más por qué el Colegio NO SIRVE y NO TIENE CREDIBILIDAD. Dra. Zambrana, teníamos esperanza, pero ayer hizo el ridículo". Asimismo, señaló que el día 24 de mayo de 2024, le envió a las partes Apeladas una carta solicitando el cese y desista, en un término de diez (10) días, de las expresiones difamatorias y que se removieran todos los videos y publicaciones que contengan expresiones difamatorias en contra del CMVPR, sin embargo, no recibió respuesta alguna.

---

[3] Apéndice 1 del Recurso, a las págs. 1-7; Entrada 1 SUMAC.

Finalmente, sostuvo que todo lo anterior le ha causado daños a la reputación y credibilidad del CMVPR.[4] Por tal razón, solicitó al Foro *a quo* que emita una orden para que las partes apeladas cesen y desistan de emitir expresiones difamatorias en contra del CMVPR, que inmediatamente remuevan los videos publicados y una cuantía por razón de daños, costas, gastos y honorarios.

El 27 de octubre de 2024, la señora Bedrosian Heres presentó su *Contestación a la Demanda.*[5] En esta, aceptó la publicación del video. No obstante, negó haber participado de la edición de este. Aclaró que, únicamente se limitó a publicarlo y a comentarlo como asunto de claro y amplio interés público. Por otro lado, levantó la defensa de la libertad de expresión y opinión. En el mismo día, Pet Friendly presentó su *Contestación a la Demanda.*[6] En resumen, sostuvo las mismas alegaciones de la *Contestación a la Demanda* de su incorporadora, la señora Bedrosian Heres.

El 28 de octubre de 2024, el Tribunal de Primera Instancia mediante *Orden* requirió a las partes Apeladas a unirse en sus posiciones en los escritos a presentarse. En el mismo día, las partes Apeladas presentaron *Moción de Sentencia Sumaria.* Señalaron los siguientes hechos como incontrovertidos:

> 1. La demandada Sylvia M. Bedrosian Heres, es la incorporadora, agente residente y principal oficial de la codemandada Pet Friendly PR Corp., una corporación doméstica, sin fines de lucro, incorporada en el Departamento de Estado de Puerto Rico.
>
> 2. El 22 de mayo de 2024, la parte demandada divulgó en su página de Instagram un video de una entrevista originada en el programa Cuarto poder del periodista Josué "Jay" Fonseca Aponte, donde la doctora Sheila M. Vega Zambrana, presidenta del demandante Colegio de Médicos Veterinarios de Puerto Rico, figuró como panelista.
>
> 3. Ese video no fue editado por la parte demandada, limitándose a permitir su despliegue en su plataforma de redes sociales Instagram.
>
> 4. Junto al referido video, la parte demandada incluyó un enlace al video según se originó en el programa Cuarto poder, como se ve en estas capturas de pantalla: (parte omitida)

---

[4] Es menester destacar que la parte Apelante no desglosó los alegados daños en su *Demanda.*
[5] Apéndice 9 del Recurso, a las págs. 34-37; Entrada 9 SUMAC.
[6] Apéndice 10 del Recurso, a las págs. 38-41; Entrada 10 SUMAC

5. Es práctica común de la parte demandada incluir enlaces de videos externos y como originalmente diseminados, en sus plataformas en línea.

6. Dicho video según desplegado en la plataforma de la parte demandada, está acompañado de las siguientes expresiones escritas:
a. "Nosotros llevamos señalando la ineptitud de OECA y del Colegio de Médicos Veterinarios".
b. "No sirven, no saben qué hacer y el video habla por sí sólo".

7. La parte demandada es la autora de las citadas expresiones.

8. El 22 de mayo de 2024, la parte demandada hizo otra publicación, esta vez en Facebook que lee:
a. "La presidenta del Colegio de Médicos Veterinarios nos demostró una vez más por qué el Colegio NO SIRVE y NO TIENE CREDIBILIDAD".
b. "Dra. Zambrana, teníamos esperanza, pero ayer hizo el ridículo".

9. La parte demandada es la autora de las citadas expresiones.

10. El demandante es una figura pública con acceso a los medios informativos y que aspira a dar a conocer sus posturas ante la opinión comunitaria.[7]

Por otro lado, como asuntos litigiosos en controversia señalaron la aplicabilidad de la legislación federal conocida como la "Communications Decency Act" del 1996 y el cumplimiento de los elementos constitutivos de las aseveraciones difamatorias. Por tal razón, solicitaron remedio sumario contra la totalidad de la reclamación por libelo y que, en consecuencia, se desestime la *Demanda* en su totalidad.

El 27 de noviembre de 2024, el CMVPR presentó *Oposición a la Solicitud de Sentencia Sumaria y Moción para que se dicte Sentencia Sumaria Parcial a favor de la parte Demandante*.[8] Señaló como único asunto litigioso en controversia si las expresiones de Pet Friendly están protegidas por la ley federal conocida como el Communications Decency Act o por la defensa de la opinión. Adujo que se encontraban en controversia los siguientes hechos señalados por las partes apeladas en su *Moción de Sentencia Sumaria*:

. . .
3. El párrafo número 3 está parcialmente en controversia. Se admite que, según la declaración jurada de Pet Friendly en apoyo a la Solicitud, Pet Friendly no fue quien editó el video que divulgó en sus páginas de redes sociales. Sin embargo, se hace constar que, según el Tribunal puede percibir de los anejos que se acompañaron con la Demanda, la publicación de Pet Friendly no

[7] Apéndice 16 del Recurso, a las págs. 47-58; Entrada 16 SUMAC.
[8] Apéndice 22 del Recurso, a las págs. 66-86; Entrada 22 SUMAC.

indica quién creó el video y tampoco parece ser una republicación (repost) de alguna publicación realizada en otra página o por otro usuario.

4. El párrafo número 4 está en controversia. Primeramente, las capturas de pantalla que Pet Friendly incluyó en la Solicitud son tan pequeñas y de tan baja calidad que es imposible leer el texto y determinar si se incluyó el referido enlace. No obstante, en el Anejo 1 a la Demanda se puede leer perfectamente el texto y también se puede corroborar que no se incluyó enlace alguno al video íntegro del programa Cuarto Poder. Por último, se trae a la atención del Tribunal que, en algún momento luego de la presentación de esta Demanda, Pet Friendly editó la publicación (véase Anejo A a esta Oposición), eliminando parte de las expresiones difamatorias que se detallan en el párrafo 4 de la Demanda y añadiendo la frase "Entrevista completa en www. Wapa.tv", lo cual no constituye un enlace a la entrevista, sino a una página en la cual podría estar publicada la entrevista, pero que requiere que el usuario busque dentro de esa página para encontrarla entre muchas otras publicaciones. Véase Anejo B a esta Oposición.

5. El párrafo número 5 consiste en un supuesto hecho que es inmaterial a las controversias de este caso porque, aunque sea práctica común de Pet Friendly incluir enlaces a videos externos en sus páginas de redes sociales, en las publicaciones objeto de esta Demanda no se incluyeron enlaces. Además, a pesar de que la demandada testificó en la declaración jurada anejada a su Solicitud que es su práctica incluir enlaces a videos, eso no es lo que se desprende de una visita a sus páginas de redes sociales.[9]

. . .

De otro lado, alegó que la inmunidad bajo el "Communications Decency Act" y la defensa de opinión no aplican a los hechos del caso. Solicitó al Foro *a quo* a denegar la solicitud de sentencia sumaria presentada por los apelados y a dictar está a su favor. Así las cosas, el 31 de enero de 2025, notificada el mismo día, el Tribunal de Primera Instancia dictó *Sentencia.*[10] Señaló las siguientes determinaciones de hechos:

1. La codemandada, Sylvia M. Bedrosian Heres, es la incorporadora, agente residente y principal oficial de la codemandada Pet Friendly PR Corp., una corporación doméstica, sin fines de lucro, incorporada en el Departamento de Estado de Puerto Rico.

2. El 22 de mayo de 2024, la parte demandada divulgó en su página de Instagram un video, editado, de una entrevista originada en el programa Cuarto poder del periodista Josué "Jay" Fonseca Aponte, donde la doctora Sheila M. Vega Zambrana, presidenta del Colegio de Médicos Veterinarios de Puerto Rico, figuró como panelista.

3. El video aludido no fue editado por la parte demandada, limitándose a permitir el despliegue y la circulación de este en su plataforma de redes sociales Instagram.

4. Posterior a la presentación de esta Demanda, la parte demandada incluyó el enlace de "Wapa.tv" en la publicación del video.

---

[9] Apéndice 22 del Recurso, a las págs. 66-86; Entrada 22 SUMAC.
[10] Apéndice 28 del Recurso, a las págs. 92-105; Entrada 28 SUMAC.

5. Dicho video, según desplegado en la plataforma de la parte demandada, está acompañado de las siguientes expresiones escritas:

a. "Nosotros llevamos señalando la ineptitud de OECA y del Colegio de Médicos Veterinarios".
b. "No sirven, no saben qué hacer y el video habla por sí sólo".

6. La parte demandada es la autora de las citadas expresiones.

7. El 22 de mayo de 2024, la parte demandada también hizo una publicación en Facebook que lee:
a. "La presidenta del Colegio de Médicos Veterinarios nos demostró una vez más por qué el Colegio NO SIRVE y NO TIENE CREDIBILIDAD".
b. "Dra. Zambrana, teníamos esperanza, pero ayer hizo el ridículo".

8. La parte demandada es la autora de las citadas expresiones.

De esta forma, el Foro primario, en cuanto al "Communications Act", determinó que Pet Friendly no califica como proveedor de servicios cibernéticos y, por tanto, este fue responsable por la publicación y divulgación del video mediante el internet. A su vez, dispuso que a Pet Friendly no le cobija la inmunidad provista por el "Communications Act". Por otra parte, puntualizó que ninguna de las partes presentó el video objeto de la causa de acción y que la parte Apelante no estimó los daños señalados.

Referente a la defensa de opinión, el Tribunal de Primera Instancia determinó que las expresiones vertidas por las partes Apeladas en las plataformas de Facebook e Instagram componen una opinión general de estos sobre el desempeño de CMVPR. Por tal razón, determinó que las opiniones de estos son protegidas por el ejercicio de libertad de expresión. Finalmente, el Foro *a quo*, por entender que no existen hechos en controversia que le impidieran disponer de la *Demanda* por la vía sumaria, decretó la desestimación de la misma.

El 13 de febrero de 2025 el CMVPR presentó *Moción de Reconsideración*.[11] Sostuvo que las expresiones de las partes apeladas, directamente ligadas al contenido del video editado, aseveran hechos que pueden ser probados como ciertos o falsos y

---

[11] Apéndice 31 del Recurso, a las págs. 108-117; Entrada 31 SUMAC.

que, por tanto, el Tribunal puede corroborar luego de una vista evidenciaría si las expresiones de la presidenta del CMVPR fueron ciertas o falsas. Además, alegó que tiene el derecho a un descubrimiento de prueba y que no pudieron presentar el video debido a que tenían que autenticarlo previo a su presentación.

El 24 de febrero de 2025 las partes Apeladas presentaron su *Oposición Conjunta a la Solicitud de Reconsideración.*[12] Alegaron que ya el video estaba autenticado y que estos aceptaron la existencia del mismo. Además, insistieron en que estos tienen derecho a emitir juicios valorativos sobre asuntos de interés público, porque se trata de su opinión. Así, pues, solicitaron al Foro primario que denegara la solicitud de reconsideración presentada por la parte apelante. En consecuencia, el 25 de febrero de 2025, notificada el mismo día, el Tribunal de Primera Instancia emitió una *Resolución* y declaró No Ha Lugar la *Moción de Reconsideración.*[13]

Inconforme aún, el 27 de marzo de 2025, el CMVPR acude ante nos mediante *Recurso de Apelación*, en el cual esbozó la comisión del siguiente error:

> ERRÓ EL TPI AL DESESTIMAR SUMARIAMENTE LA DEMANDA DEL CMVPR HABIENDO ALEGACIONES AFIRMATIVAS EN LA DEMANDA QUE NO HAN SIDO REFUTADAS Y SIN HABERSE DADO LA OPORTUNIDAD AL CMVPR DE SOMETER EL VIDEO OBJETO DE LA CONTROVERSIA COMO EVIDENCIA PARA DETERMINAR SI SU CONTENIDO ES FALSO Y DIFAMATORIO.[14]

Luego de varios incidentes procesales innecesarios pormenorizar, el 23 de abril de 2025, la parte apelada compareció mediante *Alegato Consolidado de las Apeladas.* Con el beneficio de la comparecencia de las partes, procederemos a disponer del presente recurso.

---

[12] Apéndice 33 del Recurso, a las págs. 119-124; Entrada 33 SUMAC.
[13] Apéndice 34 del Recurso, a las págs. 125-126; Entrada 34 SUMAC.
[14] *Véase* Alegato de la parte apelante, a la pág. 6.

***-II-***

***-A-***

Es norma reiterada que la sentencia sumaria es un mecanismo procesal que tiene como propósito la solución, justa, rápida y económica de los litigios civiles que no contengan controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo. *Roberto Jiménez Soto et. al. v. Carolina Catering Corp., et. al.,* 215 DPR ___ (2025). La Regla 36.1 de Procedimiento Civil establece que las partes podrán presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada. 32 LPRA Ap. V, R. 36.1.

Nuestro Más Alto Foro ha dispuesto que la sentencia sumaria es una excepción al juicio mediante testimonios vivos frente al juzgador de los hechos. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Además, que la parte que solicita la sentencia sumaria tiene la responsabilidad de demostrar de manera clara que el promovido no puede prevalecer mediante ningún supuesto de hechos y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración. *Íd.* pág. 473.

Será necesario, además, que la parte que promueva la solicitud de sentencia sumaria, cumpla con los requisitos de forma preceptuados en la Regla 36.3 de Procedimiento Civil, a saber:

(1) una exposición breve de las alegaciones de las partes;

(2) los asuntos litigiosos o en controversia;

(3) la causa de acción sobre la cual se solicita la sentencia sumaria;

(4) una relación concisa, organizada y con párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales

no hay controversia sustancial, indicando los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales se debe dictar sentencia argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3.

Asimismo, si la otra parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. *PFZ Props, Inc v Gen, Acc Ins. Co.*, 136 DPR 881, 912-913 (1994). No obstante, el solo hecho de no presentar evidencia que controvierta la presentada por el promovente, no implica necesariamente que procede la sentencia sumaria. *Íd.*, pág. 913. Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria, sino que tienen el deber de considerar todos los documentos en autos, incluso aquella que no haya formado parte de la solicitud, sin dirimir cuestiones de credibilidad. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004). **Así, pues, un Tribunal podrá dictar sentencia sumaria si de la evidencia presentada se demuestra que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente.** *Roberto Jiménez Soto et. al. v. Carolina Catering Corp., et. al.,* supra, a la pág. 11 (Énfasis nuestro).

Ahora bien, antes de utilizar el mecanismo de sentencia sumaria, el Tribunal:

(1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Management*

*Administration Services, Corp. v. ELA,* 152 DPR 599, 611 (2000).

Por su parte, **precisa señalar que el Tribunal tiene discreción para conceder o no la sentencia sumaria**, ya que el mal uso de esta puede despojar a un litigante de su día en corte, lo cual coartaría su debido proceso de ley. *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 617 (1990) (Énfasis nuestro). Es por lo anterior, que no es aconsejable que se utilice el mecanismo de sentencia sumaria cuando hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia que deban ser evaluados por el juzgador. *Cruz Cruz v. Casa Bella Corp.*, 2024 TSPR 47, 213 DPR ___ (2024); *Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 980. No obstante, el Tribunal puede utilizar el mecanismo de sentencia sumaria, aun cuando hay elementos subjetivos, si la evidencia que será considerada en la solicitud surge que no existe controversia en cuanto a los hechos materiales. *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*, pág. 442-443.

En síntesis, el Tribunal de Primera Instancia no podrá dictar sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no ha sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre hecho material y esencial, o (4) como cuestión de derecho no proceda". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, 208 DPR 310, 335 (2021).

En cuanto al estándar de revisión aplicable al Tribunal de Apelaciones al momento de revisar la determinación del foro primario de conceder o denegar la sentencia sumaria, el foro intermedio apelativo solo puede:

(1) considerar los documentos que se presentaron ante el foro primario —cual implica que, en apelación los litigantes no

pueden añadir prueba que no fue presentada oportunamente ante el foro primario, ni esbozar nuevas teorías—, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 981.

Por utilizar los mismos criterios de evaluación, **los foros apelativos se encuentran en la misma posición que el tribunal de instancia.** *Meléndez González et al. V. M. Cuebas*, 193 DPR 100, 116 (2015) (Énfasis nuestro). Ahora bien, el Tribunal Supremo de Puerto Rico estableció que el estándar a seguir para revisar la denegatoria o concesión de una moción de sentencia sumaria es el siguiente:

> (1) que el Tribunal de Apelaciones se encuentre en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria, y que esta revisión sea *de novo*;
>
> (2) que el Tribunal de Apelaciones revise que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en las Reglas de Procedimiento Civil;
>
> (3) que el Tribunal de Apelaciones revise si en realidad existen hechos materiales en controversia y si existen debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y
>
> (4) si los hechos materiales realmente son incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho en la controversia. *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 982. (Énfasis suplido).

### -*B*-

Nuestra Constitución reconoce el derecho de "toda persona a la protección contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar." Art. II, Sec. 8, de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA Tomo 1; *Ojeda v. El Vocero de P.R.*, 137 DPR 315, 327 (1994). Esta protección, que sirve de base para la causa de acción por difamación, está contrapuesta con otro principio de igual índole constitucional, que es el derecho a la libertad de expresión, consagrado en el Art. II, Sec. 4, de nuestra Constitución. *Íd.*; *Porto y Siurano v. Bentley P.R., Inc.,* 132 DPR 331, 343 (1992). Debido a que nuestra Constitución es la principal fuente

de la causa de acción por difamación, lo establecido en la Ley de Libelo y Calumnia, 32 LPRA secs. 3141-3149, solamente subsiste en aquellas partes que no sean incompatibles con nuestra Constitución. *Íd.*, pág. 378. Con el transcurso del tiempo la jurisprudencia ha reconocido que las acciones de difamación deben dilucidarse al amparo del Art. 1536 del Código Civil, 31 LPRA sec. 10801. *Colón, Ramírez v. Televicentro de P.R.*, 175 DPR 690, 726 (2009).

Por otro lado, se ha definido la difamación como el desacreditar a una persona mediante la publicación de información que, de alguna manera y otra, atenten contra su reputación. *Pérez v. El Vocero de P.R.,* 149 DPR 427, 441 (1999). Para que prospere esta acción, se requiere además que el reclamante establezca que la alegada comunicación, que se reputa falsa y difamatoria, le haya causado daños. *Acevedo Santiago v. Western Digital Caribe, Inc.*, 140 DPR 452, 461 (1996).

En casos en donde se alega que hubo difamación, el análisis que deben realizar los tribunales para determinar si hubo negligencia va a depender de si el demandante es una figura pública o privada. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Torres Silva v. El Mundo, Inc.*, 106 DPR 415, 421-422 (1977). Así las cosas, nuestro Tribunal Supremo ha resuelto que para que prospere una acción por difamación requiere que el demandante pruebe:

> "(1) la falsedad de la información publicada; (2) los daños reales sufridos a causa de dicha publicación; (3) si el demandante es una figura privada, hay que demostrar que las expresiones fueron hechas negligentemente, y (4) si el demandante es una figura pública, en vez, hay que demostrar que las expresiones se hicieron con malicia real, es decir, a sabiendas de que era falso o con grave menosprecio de si era falso o no". Garib Bazain v. Clavell, 135 D.P.R. 475, 482 (1994).

La importancia de distinguir entre una figura pública y una figura privada estriba en la evidencia necesaria para probar la causa de acción por difamación. Por un lado, de tratarse de una figura

privada, el estándar aplicable es aquel de negligencia según definido en las controversias resueltas al amparo del Art. 1536 del Código Civil, *supra.* Por otro lado, si el demandante es considerado como figura pública, se debe probar la existencia de malicia real, es decir, que la expresión difamatoria se hizo a sabiendas de que era falsa o con grave menosprecio de si era falsa o no. No obstante, en ambos casos, ya sea para establecer la existencia de negligencia en el caso de un demandante privado o de malicia real en cuanto a una figura pública, **es necesario que el demandante presente prueba clara y convincente.** *Colón, Ramírez v. Televicentro de P.R.*, supra, pág. 725 (Énfasis nuestro). Es preciso destacar que la malicia real no se presume, sino que es necesario que la figura pública demuestre, mediante prueba clara y convincente, que el demandado tenía serias dudas sobre la verdad de lo publicado. *Garib Bazain v. Clavell,* supra, a la pág. 484. No basta con una afirmación generalizada de que el demandado obró con malicia real, sino que esta tiene que establecerse con hechos específicos. *Meléndez Vega v. El Vocero de P.R.*, 189 DPR 123, 149 (2013).

Conviene recordar que la Ley de Libelo y Calumnia, Ley de 19 de febrero de 1902, 32 LPRA sec. 3141 *et seq.*, la difamación tiene dos vertientes o formas de manifestarse: libelo (por escrito) y calumnia (por vía oral). 32 LPRA secs. 3142 y 3143. **En cuanto a la disposición de casos en los que se reclamen daños por difamación, nuestro Tribunal Supremo ha establecido que se puede disponer sumariamente de estos casos en dos instancias.** *Colón, Ramírez v. Televicentro de P.R.,* supra, a la pág. 724 (Énfasis nuestro). La primera se configura cuando se demuestra que los hechos alegados no son suficientes para establecer la causa de acción por difamación, pues no concurren los requisitos necesarios para tal causa de acción. *Íd.* En este caso, la evidencia a examinarse son los documentos o declaraciones juradas que

acompañe el promovente de la solicitud con su moción. *Íd.* Una vez el promovente haya justificado que procede la desestimación sumaria, le corresponde al demandante controvertir los hechos con otras declaraciones juradas u otra prueba documental. *Íd.*

La segunda instancia es cuando el promovente de la solicitud demuestra con éxito que el demandante no cuenta con prueba suficiente para establecer los requisitos de su reclamación, es decir, que carece de prueba para demostrar algún elemento esencial de la causa de acción. *Íd.* Ante ello, el promovido está obligado a producir prueba específica que, de ser admitida y creída, demuestre todos los elementos de la causa de acción. *Íd.*

### -C-

Nuestro Tribunal Supremo ha reconocido la existencia de múltiples defensas oponibles a las causas de acción por difamación. En *Garib Bazain v. Clavell*, supra, nuestro Más Alto Foro incorporó a nuestro ordenamiento jurídico las defensas de la opinión y la hipérbole retórica. *Íd.*, a la pág. 491. La hipérbole retórica se define como una expresión alegadamente difamatoria y que no se acciona si se utiliza en sentido figurativo, flexible y no necesariamente por su significado literal. *Vigoreux Lorenzana v. Quizno's*, 173 DPR 254, 274 (2008); *Garib Bazain v. Clavell*, supra, a la pág. 486. De modo que la hipérbole retórica es una defensa oponible a las imputaciones de falsedad o mendacidad de una expresión alegadamente libelosa. *Vigoreux Lorenzana v. Quizno's*, supra, a la pág. 274. Por otro lado, en lo pertinente a la controversia ante nos, **una expresión de opinión relativa a cuestiones de interés público que no contenga una connotación fáctica que sea susceptible de ser probada como falsa, recibirá una protección constitucional total.** *Garib Bazain* v. *Clavell*, supra, a la pág. 489 (Énfasis nuestro).

*-III-*

En el recurso de *Apelación* ante nuestra consideración, la parte apelante esbozó un (1) error que juzga cometió el foro primario. En síntesis, sostiene que erró el Tribunal de Primera Instancia al desestimar sumariamente la *Demanda* habiendo alegaciones afirmativas que no han sido refutadas y sin haberle dado la oportunidad a estos de presentar el video objeto de la controversia como evidencia para determinar si su contenido es falso o difamatorio. Adelantamos que no le asiste la razón a la parte Apelante. Veamos.

Según hemos expuesto anteriormente, el mecanismo de sentencia sumaria se encuentra regulado en la Regla 36 de procedimiento civil. 32 LPRA Ap. V, R. 36. Asimismo, la revisión por este Foro intermedio, en cuanto a una moción de sentencia sumaria y su correspondiente oposición, acontece de *novo.* Por tal razón, al utilizar los mismos criterios de evaluación, **los foros apelativos se encuentran en la misma posición que el tribunal de instancia.** *Meléndez González et al. V. M. Cuebas*, 193 DPR 100, 116 (2015) (Énfasis nuestro). Primeramente, nos corresponde determinar si los escritos cumplen con los requisitos de forma esbozados en la Regla 36.3 (a) y (b) de Procedimiento Civil. 32 LPRA Ap. V, R. 36. Luego de evaluada la *Moción de Sentencia Sumaria* y su correspondiente *Oposición,* es la apreciación de este foro que ambos escritos cumplieron con los requisitos y formalidades establecidas en la regla antes mencionada.

Precisa señalar que, en la *Moción de Sentencia Sumaria,* las partes apeladas señalaron como único asunto en controversia si las expresiones en las publicaciones están cobijadas bajo la doctrina de opinión y el "Communications Decency Act" de 1996. Para sustentar lo alegado incluyeron una declaración jurada en la que la señora Bredosian Heres admitió ser la autora de las expresiones y la

publicación del video en las redes sociales de Pet Friendly. De otra parte, la parte apelante en su *Oposición* incluyó imágenes del video, capturas de las expresiones de Pet Friendly y una declaración jurada de su presidenta, la señora Vega Zambrana. A su vez, solicitó sentencia sumaria a su favor y señaló como único asunto en controversia si las expresiones de la parte apelada constituían difamación y sostuvo que todo lo anterior le ha causado daños. Sin embargo, a pesar de sus alegaciones, no presentó prueba para sustentar sus señalamientos. Como es sabido, si la otra parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. *PFZ Props, Inc v Gen, Acc Ins. Co.*, supra, a las págs. 912-913.

El Tribunal de Primera Instancia no podrá dictar sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no ha sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre hecho material y esencial, o (4) como cuestión de derecho no proceda". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, 208 DPR 310, 335 (2021). La parte apelante en su recurso nos invita a concluir que hay alegaciones afirmativas en la demanda que no han sido refutadas basándose en que no pudo presentar el video y que, por tal razón, el Tribunal de Primera Instancia estaba impedido de disponer de la *Demanda* sumariamente. Justipreciamos que la parte apelada refutó las alegaciones afirmativas señaladas. Esto, admitiendo la publicación de sus expresiones y que no fue participe de la edición del video objeto de la causa de acción.

No obstante, lo anterior, coincidimos con el Foro primario en que correspondía a la parte Apelante en su *Oposición* a la moción de sentencia sumaria presentar el video que tenía disponible en su

expediente como objeto de la causa de acción para así poner en posición al Foro primario para adjudicar el petitorio sumario. Sin embargo, reiteramos que la prueba que obraba en el expediente era suficiente para determinar que la parte Apelante no tenía derecho a la concesión de un remedio por difamación. Esto, debido a que se presentó imágenes de las opiniones de Pet Friendly en las redes sociales y estas constituían la prueba sobre las expresiones que alega la parte Apelante, son difamatorias. No habiendo hechos esenciales en controversia y restando únicamente un asunto de derecho por dirimirse, el Foro *a quo* no estaba impedido de dirimir el asunto por la vía sumaria. Es hartamente conocido que un Tribunal podrá dictar sentencia sumaria **si de la evidencia presentada se demuestra que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente.** *Roberto Jiménez Soto et. al. v. Carolina Catering Corp., et. al.,* supra, a la pág. 11 (Énfasis nuestro).

Es menester destacar que, en cuanto a la disposición de casos en los que se reclamen daños por difamación, nuestro Tribunal Supremo ha establecido que se puede disponer sumariamente de estos casos en dos instancias. *Colón, Ramírez v. Televicentro de P.R.,* supra, a la pág. 724 (Énfasis nuestro). La primera se configura cuando se demuestra que los hechos alegados no son suficientes para establecer la causa de acción por difamación, pues no concurren los requisitos necesarios para tal causa de acción. *Íd.* La segunda instancia es cuando el promovente de la solicitud demuestra con éxito que el demandante no cuenta con prueba suficiente para establecer los requisitos de su reclamación, es decir, que carece de prueba para demostrar algún elemento esencial de la causa de acción. *Íd.* En el presente caso, determinamos que nos

encontramos frente a una de las instancias señaladas por Nuestro Más Alto Foro, para disponer de esta causa de acción sumariamente, pues los hechos alegados por la parte apelante no fueron suficientes para establecer la causa de acción por difamación.

Nuestro Tribunal Supremo ha resuelto que para que prospere una acción por difamación requiere que el demandante pruebe:

> "(1) la falsedad de la información publicada; (2) los daños reales sufridos a causa de dicha publicación; (3) si el demandante es una figura privada, hay que demostrar que las expresiones fueron hechas negligentemente, y (4) si el demandante es una figura pública, en vez, hay que demostrar que las expresiones se hicieron con malicia real, es decir, a sabiendas de que era falso o con grave menosprecio de si era falso o no". Garib Bazain v. Clavell, 135 D.P.R. 475, 482 (1994).

Enfatizamos que la parte apelante no incluyó en su *Oposición* prueba que nos persuada para determinar que se cumplieron con los requisitos de difamación en el presente caso. Así, pues, basó su reclamación únicamente en una declaración jurada y fotos de la publicación sin presentar prueba sobre la falsedad de la publicación y los alegados daños que no fueron cuantificados. Puntualizamos que en nuestro ordenamiento jurídico se ha establecido, en estos casos de difamación, que, si el demandante es considerado como figura pública, se debe probar la existencia de malicia real, es decir, que la expresión difamatoria se hizo a sabiendas de que era falsa o con grave menosprecio de si era falsa o no. No obstante, en ambos casos, ya sea para establecer la existencia de negligencia en el caso de un demandante privado o de malicia real en cuanto a una figura pública, **es necesario que el demandante presente prueba clara y convincente.** *Colón, Ramírez v. Televicentro de P.R.,* supra, pág. 725 (Énfasis nuestro). Nos queda claro que la parte apelante es una figura pública, por lo que, el estándar de prueba va dirigido a probar la existencia de malicia real. En el caso ante nos, no podemos determinar que la prueba presentada por la parte Apelante cumple con los estándares señalados.

En cuanto a la defensa de opinión, levantada por la parte Apelada en su *Alegato Consolidado*, Nuestro Tribunal Supremo ha reconocido la existencia de múltiples defensas oponibles a las causas de acción por difamación. En *Garib Bazain v. Clavell*, supra, nuestro Más Alto Foro incorporó a nuestro ordenamiento jurídico las defensas de la opinión y la hipérbole retórica. *Íd.*, a la pág. 491. En lo pertinente a la controversia ante nos, **una expresión de opinión relativa a cuestiones de interés público que no contenga una connotación fáctica que sea susceptible de ser probada como falsa, recibirá una protección constitucional total.** *Garib Bazain* v. *Clavell*, supra, a la pág. 489 (Énfasis nuestro). Coincidimos con el Tribunal de Primera Instancia en que las expresiones de la parte apelada están cobijadas bajo la defensa de opinión debido a que estas constituían opiniones generales sobre el desempeño del CMVPR.[15] Asimismo, estas no establecen un hecho particular que pueda interpretarse o entenderse como cierto. Por tanto, las expresiones de la parte Apelada están protegidas constitucionalmente bajo la garantía constitucional de la libertad de expresión. Por todo lo anterior, no se cometió el error esbozado.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[15] Las opiniones publicadas por Pet Friendly fueron las siguientes:
"Nosotros llevamos señalando la ineptitud de OECA y del Colegio de Médicos Veterinarios. No sirven, no saben qué hacer y el video habla por sí solo".
"La presidenta del CMVPR nos demostró una vez más por qué el Colegio NO SIRVE y NO TIENE CREDIBILIDAD. Dra. Zambrana, teníamos esperanza, pero ayer hizo el ridículo."